IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWONDA P., <br><br> Plaintiff, <br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of <br> Social Security, <br><br> Defendant. | Case No. 20-cv-2573 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawonda P.[1] seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits. Lawonda asks the Court to reverse and remand the ALJ's decision, and the Commissioner moves for its affirmance. For the reasons set forth below, the ALJ's decision is reversed and this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## I. BACKGROUND

Lawonda worked as an insurance manager and agent until March 2017, when she was in an automobile accident. (R. 244, 294). Lawonda presented to the emergency room with pain in her right arm and leg, as well as her neck and upper back. *Id.* at 294. A CT scan of Lawonda's cervical spine showed uncovertebral joint disease with mild right and severe left neural foraminal stenoses; Lawonda was diagnosed with cervicalgia and acute thoracic back pain. *Id.* at 295-96. Subsequently, Lawonda's doctors opined that she had cervical spine radiculopathy and lumbar radiculopathy. *Id.* at 392, 612, 540, 966. In addition to her back injuries, Lawonda was found to

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

suffer from adjustment disorder with mixed anxiety and depressed mood, chronic foot pain, and fibromyalgia. *Id.* at 713, 721, 920. Lawonda's treatment of her conditions included office visits, physical therapy, the obtaining of medical imaging scans, psychotherapy, and the use of prescription medication, such as gabapentin and duloxetine. *See, e.g., id.* at 338-39, 391-92, 422-23, 609-13, 665-70, 837.

Lawonda applied for disability insurance benefits in July 2017, alleging disability beginning March 9, 2017. (R. 211). Lawonda's claim was initially denied on October 11, 2017, and upon reconsideration on March 16, 2018. *Id*. at 118, 133. Upon Lawonda's written request for a hearing, she appeared and testified at a hearing held on October 9, 2018 before ALJ Deborah Ellis. *Id.* at 36-105. At the hearing, the ALJ heard testimony from Lawonda and a vocational expert, Heather Mueller. *Id.*

On March 6, 2019, the ALJ issued a decision denying Lawonda's application for disability benefits. (R. 15-31). The opinion followed the required five-step evaluation process. 20 C.F.R. §§ 404.1520. At step one, the ALJ found that Lawonda had not engaged in substantial gainful activity since March 9, 2017, the alleged onset date. *Id.* at 18. At step two, the ALJ found that Lawonda had the severe impairments of degenerative disc disease of the cervical spine and degenerative disc disease of the thoracic spine. *Id.* At step three, the ALJ determined that Lawonda did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 404.1526). *Id.* at 22.

The ALJ then concluded that Lawonda retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> the claimant must never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. The claimant's

> far visual acuity is limited to 20/50 bilaterally. She must avoid concentrated exposure to vibration, unprotected heights, and moving mechanical parts. The claimant, if necessary, may stand, stretch, and move around at the workstation each hour. She will be off task up to 15% of the workday. The claimant would be expected to absent about one (1) day per month.

(R. 22-23). Based on this RFC, the ALJ determined at step four that Lawonda could perform her past relevant work as an underwriter and as an insurance agent/administrative clerk (a composite job). *Id.* at 29. Because of this determination, the ALJ found that Lawonda was not disabled. *Id.* at 30. The Appeals Council denied Lawonda's request for review on February 28, 2020, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1; *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a

determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d 940. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

The ALJ found Lawonda not disabled at step four of the sequential analysis because she retains the RFC to perform her past relevant work as an insurance underwriter and the composite job of insurance agent and administrative clerk, both skilled jobs. Lawonda argues that the ALJ's mental RFC is erroneous in this case, due to the ALJ's failure to accommodate the mild limitations found in step two, as well as the ALJ's failure to provide the requisite accurate and logical bridge for the mental RFC. Doc. [22] at 10-11. The Court agrees.[2] Accordingly, for the reasons discussed below, the ALJ's decision must be reversed.

If a claimant "has a medically determinable mental impairment, then the ALJ must document that finding and rate the degree of functional limitation in four broad areas," which includes the category of "concentration, persistence, or pace." *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)). The ALJ will rate a claimant's degree of limitation in the four broad areas according to the following five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates a limitation as

---

[2] Because the Court remands on this basis, the Court does not address Lawonda's other arguments.

4

"none" or "mild," the ALJ will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1).

However, the ALJ "must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment[.]" SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Rather, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." *Id.* In addition, when crafting a mental RFC, the ALJ must consider the impact of both a claimant's severe and non-severe impairments. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014) (citation omitted) ("An RFC determination must account for all impairments, even those that are not severe in isolation."); 20 C.F.R. § 404.1545(a)(2). Finally, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citations omitted).

At step two, the ALJ concluded that Lawonda had mild limitations in her ability to interact with others and in her ability to concentrate, persist, or maintain pace. (R. 18). The ALJ then listed some of Lawonda's medical history, mentioned Lawonda's testimony regarding her daily activities, and found that "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas, it is non-severe." *Id.* at 19 (citing 20 C.F.R. § 404.1520a(d)(1)). Next, the ALJ acknowledged that her step two findings did not constitute a mental RFC assessment, and that such an assessment "requires a more detailed

5

assessment[.]" *Id.* at 19 (citing SSR 96-8p). The ALJ previewed that a subsequent RFC assessment would "reflect[] the degree of limitation . . . found in the 'Paragraph B' mental function analysis." *Id.*

Yet, that subsequent RFC analysis never came. The ALJ crafted an RFC that did not include any mental health limitations, and without discussing Lawonda's mental health issues in the RFC analysis.[3] The ALJ did not assess Lawonda's adjustment disorder, her depression and anxiety symptoms, or the concentrations and drowsiness side effects caused by her prescription medications. Nor did the ALJ determine how Lawonda's impairments in interacting with others or in concentrating, persisting, and maintaining pace could have impacted her ability to sustain full-time work. Instead, the ALJ's RFC analysis appears to be only a physical RFC assessment.[4] The ALJ thus erred because she had a duty to assess Lawonda's residual functional capacity with respect to all of Lawonda's impairments, even the non-severe ones. The ALJ, moreover, failed to build the requisite accurate and logical bridge from the evidence concerning Lawonda's mental impairments to her selected RFC, which omitted mental health restrictions. *See Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. Jan. 17, 2017) (citation omitted) (emphasis in original) ("While a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC.").

---

[3] While the ALJ's RFC allowed Lawonda to be off task for 15% of the day with one absence per month, those restrictions were included to accommodate Lawonda's pain and physical impairments. (R. 28).

[4] By the Court's review, the only mention of Lawonda's mental health issues in the RFC analysis consisted of the ALJ's summary of some of Dr. Sigamony's opinions on Lawonda's attention and concentration impairments. (*See* R. 28-29). But even that summary failed to reveal a mental RFC analysis, because the ALJ's discounting of Dr. Sigamony's opinions was vague and non-specific. The ALJ appeared to take issue with Dr. Sigamony's opinions regarding Lawonda's physical pain and fibromyalgia but did not specifically weigh any of Dr. Sigamony's opinions concerning attention, concentration, and ability to maintain pace.

The Commissioner argues that a fair reading of the ALJ's decision shows why the ALJ chose not to include mental health restrictions in the RFC. Doc. [24] at 6-8. According to the Commissioner, the ALJ's "analysis of the mental health records in relation to steps two and three and her conclusion that the evidence did not support further limitations than those accommodated in her RFC finding sufficiently expresses her reasonable rationale that [Lawonda's] slight difficulties did not affect her ability to work." *Id.* at 7-8. The Court disagrees. While the Court generally reads the ALJ's decision as a whole, *see Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004), the ALJ here explicitly stated that the step two analysis did not constitute a mental RFC assessment. (R. 19).

Even if the Court were to ignore the ALJ's words and attempt to substitute the ALJ's step two findings for a mental RFC analysis, that analysis would still be problematic. To begin, the ALJ's step two "analysis," as discussed above, is really just a recitation of some medical history, and "summarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion." *Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *8 (N.D. Ill. Oct. 30, 2015) (citation omitted). The closest the ALJ came to analyzing Lawonda's mental health treatment history was in concluding that Lawonda's records "reflect essentially benign mental examinations."[5] (R. 19). The ALJ subsequently listed observations that were "consistently" noted by Lawonda's doctors, such as normal mood and intact memory, and observed that Lawonda "displayed no signs of depression, agitation, irritability or anxiety." *Id.*

---

[5] The Commissioner avers that the ALJ found that Lawonda "improved with therapy and medication[.]" Doc. [24] at 7. The Commissioner reads analysis into the ALJ's passive summary of medical records that is lacking in the ALJ's decision. Under the *Chenery* doctrine, however, this Court reviews the case based on the ALJ's analysis, not the Commissioner's supplemented version of the ALJ's assessment. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). At any rate, the record does not support such an improvement conclusion, as Lawonda's most recent mental health examinations show that she continued to suffer from anxiety, depression, memory difficulties, and sleeping problems. (R. 887, 908, 944).

However, the record does not support the ALJ's conclusion. True, one consultative examiner noted no signs of depression, agitation, irritability, or anxiety in September 2017, but that was nearly a year before a psychiatrist diagnosed Lawonda with adjustment disorder with mixed anxiety and depressed mood. *Id.* at 437, 721. After that diagnosis, Lawonda was treated on a weekly basis by a psychiatrist who consistently noted Lawonda as having anxiety, irritability, memory difficulties, sleeping problems, and depression symptoms. *See, e.g.*, *id.* at 671, 711, 719, 731, 748, 779, 812, 835, 887. But the ALJ failed to address the more recent mental health examinations that reflected Lawonda's mental health impairments, opting instead to cherry-pick the favorable mental health examinations conducted by non-specialists. *Id.* at 19 (citations omitted). As a result, the ALJ's step two "analysis"—more of a summary with an unsupported "benign mental examinations" conclusion—fails to provide the requisite accurate and logical bridge from the evidence of Lawonda's mental health impairments to an RFC with no mental health restrictions. *See Fisher v. Berryhill*, 760 Fed. Appx. 471, 476 (7th Cir. 2019) (explaining that the "substantial evidence" standard requires the building of "a logical and accurate bridge between the evidence and conclusion").

The absence of an accurate and logical bridge, furthermore, only presents half of the problem here. The other half is the ALJ's ultimate failure to accommodate Lawonda's mild CPP limitations. Courts in this Circuit have found that mild CPP limitations can impact a claimant's ability to perform past skilled work. *See, e.g.*, *Simon-Leveque*, 229 F. Supp. 3d at 787-88 (explaining mild CPP limitation could impact claimant's ability to perform skilled work as brokerage clerk); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3 (N.D. Ill. Sept. 7, 2018) (finding mild limitations in social functioning or in concentration, persistence, or pace could affect claimant's ability to perform semi-skilled work as information clerk); *Hovi v. Colvin*,

No. 12-C-169, 2013 WL 3989232, at *16 (W.D. Wis. Aug. 2, 2013) (mild CPP limitations may preclude semi-skilled or skilled work).

Here, the ALJ found a mild CPP limitation and a mild limitation in Lawonda's ability to interact with others, yet did not ask the vocational expert about any of Lawonda's mental limitations. The vocational expert consequently determined that Lawonda could perform her past skilled work as underwriter and insurance agent/administrative clerk (a composite job); the ALJ then adopted that finding in her decision. (R. 29-30, 102-03). But because the vocational expert was not asked about Lawonda's CPP and social interaction limitations, it is not clear that Lawonda could actually perform her past relevant work. For instance, the Dictionary of Occupational Titles (DOT) instructs that an administrative clerk "[g]ives information to and interviews customers, claimants, employees, and sales personnel," which would require working with others. DOT 219.362-010. In a similar vein, the job of insurance underwriter appears to require a good deal of concentration, as an underwriter primarily "[r]eviews insurance applications to evaluate, classify, and rate individuals and groups for insurance and accepts or rejects applications, following establishment underwriting standards[.]" DOT 169.267-046. Because the ALJ failed to include Lawonda's record-supported mental limitations in the hypothetical to the vocational expert and in her RFC assessment, the ALJ's mental RFC is erroneous.[6] *See Yurt*, 758 F.3d at 857;

---

[6] The Commissioner points out that the reviewing physicians did not opine that Lawonda had any concentration limitations, and that Lawonda does not attack the ALJ's weighing of the contrary treating physician opinion. Doc. [24] at 5. Although the Commissioner is mostly correct, the observation does not advance her position. The latest state agency physician review took place in March 2018, four months before Lawonda began psychiatric treatment and was diagnosed with adjustment disorder with mixed anxiety and depressed mood, so their opinions were stale as to Lawonda's mental health impairments. (R. 129, 713). *See Thomas v. Colvin*, 826 F.3d 953 (7th Cir. 2016); *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). On top of that, the state agency physicians failed to assess Lawonda's mental RFC altogether. So, to the extent that the ALJ did discount Dr. Sigamony's mental health opinions (the ALJ's weighing of his opinions is vague), that meant the ALJ rejected the only mental RFC opinion in the record and made her step two determinations and mental RFC without the assistance of an expert opinion. In short, the ALJ's mental RFC opinion in this case lacked expert opinion support, and that lack of support undermines, rather than advances, the Commissioner's arguments.

*Alesia v. Astrue*, 789 F. Supp. 2d 921, 933-34 (N.D. Ill. 2011) ("Because the ALJ did not include any mental functioning restrictions in his RFC finding, Claimant's mental functioning limitations could not be taken into account in the step-four finding. As a result, the ALJ never considered whether Claimant's mental impairments affected her ability to perform her past relevant work, which was skilled in nature.")

The Commissioner highlights Lawonda's burden of proof and argues that any failure in the ALJ's mental health RFC analysis constitutes harmless error, as Lawonda has not identified specific work-related functional limitations that should have been included. Doc. [24] at 8. Although it is certainly true that Lawonda "bears the burden of producing medical evidence that supports her claims of disability," *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008), Lawonda fulfilled her obligation by providing months of weekly psychiatrist treatment records documenting Lawonda's issues with anxiety, depression, sleeping, and memory, as well as an opinion from a treating physician that Lawonda's symptoms and the side effects from her medication could prevent Lawonda from being able to concentrate and sustain effort. (R. 646-52, 671, 711, 719, 731, 748, 779, 812, 835, 887). Lawonda further attacked the ALJ's conclusion that she could perform skilled work in light of her mental limitations and asserted that a social interaction restriction should have been included in the mental RFC, as Lawonda's "past work involved supervising and interacting with others." Doc. [22] at 16. So, the Court cannot say that the ALJ's mental RFC error was harmless as was the case in *Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019) and *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019).[7]

---

[7] The Commissioner capitalizes on one answer Lawonda gave at her testimony about her physical ailments, insisting that Lawonda "still does not allege that any mental conditions affected her ability to work[.]" Doc. [24] at 8. As an initial matter, Lawonda testified about memory problems and stated that she experienced drowsiness and dizziness from taking her medications. (R. 70, 79-80, 93-95). The Commissioner's argument further misses the point. Once the ALJ found CPP limitations, it was her duty

10

In conclusion, the combination of the above errors warrants remand. While the Court is mindful of the "lax" standard the Seventh Circuit applies to the ALJ's analysis, *see* Doc. [24] at 6 (citing *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)), the Seventh Circuit nevertheless requires the ALJ to consider the impact of non-severe limitations, include record-supported limitations in the hypothetical to the VE and the RFC, and construct an accurate and logical bridge from the evidence to the ALJ's conclusions. *Villano*, 556 F.3d at 563; *Yurt*, 758 F.3d at 857; *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The ALJ's mental RFC did not meet those requirements in this case. On remand, the ALJ shall conduct a mental RFC, considering even Lawonda's non-severe impairments. The ALJ shall then pose a hypothetical to the vocational expert and craft an RFC which includes all of Lawonda's record supported limitations. If the ALJ believes that Lawonda's Paragraph B limitations do not merit a non-exertional limitation in the RFC, the ALJ shall explain that conclusion in a way that a reviewing court may follow her reasoning. *See Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (citing *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)). Also, because the state agency physicians failed to assess Lawonda's mental RFC, as discussed above, the ALJ may want to consider calling a medical expert to review Lawonda's medical records and translate Lawonda's Paragraph B limitations into a mental RFC.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Summary Judgment [23] is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed and this case is remanded to the Social Security Administration for further proceedings consistent with this

---

to articulate a mental RFC and account for record-supported limitations in the RFC. *See McCulley v. Berryhill*, No. 13 C 6031, 2019 WL 1292982, at *5 (N.D. Ill. Mar. 20, 2019).

11

opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: August 5, 2021

_____
Sunil R. Harjani
United States Magistrate Judge